<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PETER W. EMMET,

    Plaintiff,

v.

TOM DEL FRANCO, et al.,

    Defendants.

Civil Action No. 14-8014 (MAS) (DEA)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

  This matter comes before the Court on two motions. Defendants Tom Del Franco and Organic America Farms of Amherst, Massachusetts, LLC, improperly pled as Organic America Farms of Amherst, LLC, (collectively, "Defaulting Defendants") move to vacate and set aside the entry of default entered against them pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. (ECF No. 17.) Additionally, Defendants John Osendorf, Nicholas Del Franco ("Nicholas"), Martin Karo ("Karo") (collectively with Tom Del Franco, "Individual Defendants"); Organic America, Organic America Supply, Organic America Farms, LLC, Hydroponics House, improperly pled as Hydroponics House, LLC, Organic America Holdings, LLC, Organic America Wholesale, LLC, Organic America of Fort Myers, LLC, The Homestead Greenhouse Leasing Company, LLC, NDF Enterprises, D&G Green Enterprises, LLC, Mad Hatter Nutrients and Soils, Homestead Hydro (collectively with Organic America Farms of Amherst, Massachusetts, LLC, "Corporate Defendants"); and Defaulting Defendants move to dismiss Plaintiff Peter W. Emmet's ("Plaintiff") Complaint on several grounds, including lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted. (ECF No. 16.) In the

alternative, Defendants seek to transfer venue to Michigan. (*Id.*) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defaulting Defendants' motion to vacate is granted and Defendants' alternative request to transfer venue is granted.

I.  **Background**

This matter involves allegations of fraud stemming from an alleged breach of contract dispute regarding Plaintiff's investment in Defendants' marijuana growing and selling business. Plaintiff alleges that on or about August 6, 2013, he and Nicholas entered into two written agreements that conferred fifty percent ownership in Hydroponics House, d/b/a Organic America of Detroit ("Hydroponic Agreement"), and Greenhouse Leasing Company, LLC ("Greenhouse Agreement") to Plaintiff in exchange for his investment of $125,000 and $500,000, respectively. (Compl. ¶¶ 53, 60-63, 72, 76, ECF No. 1.) Plaintiff transferred the requisite funds on August 8, 2013, and October 1, 2013, respectively. (*Id.* ¶¶ 63, 80.) Plaintiff claims that the Hydroponic Agreement was negotiated by and between Defendants and Plaintiff in New Jersey and Massachusetts and executed by himself and Nicholas in Massachusetts. (*Id.* ¶¶ 54-56.) Plaintiff further asserts that the Greenhouse Agreement was negotiated and executed by both Plaintiff and Nicholas in Amherst, Massachusetts. (*Id.* ¶¶ 73-75.)

In addition, to support his assertion of personal jurisdiction over Defendants, Plaintiff asserts that: (1) Defendants, on more than one occasion, reached out to Plaintiff to get him to invest in their business while he was in New Jersey; (2) Defendants made numerous fraudulent statements and misrepresentations to Plaintiff while he was in New Jersey; (3) Nicholas met with Plaintiff in New Jersey, on behalf of all of the Defendants, on multiple occasions; (4) Plaintiff received numerous telephone calls seeking his investment while he was in New Jersey; (5) the promissory

note that Karo drafted was executed by Plaintiff in New Jersey; and (6) the money for Plaintiff's investment was wired from a New Jersey financial institution. (Certification of Peter Emmet ("Pl. Cert.") ¶¶ 1-10, ECF No. 23.)

Nicholas, however, asserts that neither he nor any of the other Defendants conduct business, have assets, offices, factories, greenhouses, or stores located in, solicit business of any kind, sell or deliver products, or have agents in New Jersey. (Certification of Nicholas Del Franco ("N. Del Franco Cert.") ¶¶ 5-15, ECF No. 16-2.) Further, Nicholas asserts that it was, in fact, Plaintiff that contacted him in July 2013, expressing his interest in investing in Defendants' business and that Plaintiff traveled to Massachusetts to discuss his proposal. (*Id.* ¶¶ 17-18.)

The parties in this action are citizens of the states of New Jersey, Michigan, Colorado, Pennsylvania, Florida, and Massachusetts. Specifically, Plaintiff is a New Jersey resident. (Compl. ¶ 1.) Tom Del Franco is a resident of Bloomfield, Michigan. (*Id.* ¶ 2.) Nicholas resides in Castle Rock, Colorado. (*Id.* ¶ 3.) John Osendorf resides in Lone Tree, Colorado. (*Id.* ¶ 4.) Karo, an attorney-at-law, resides in Yardley, Pennsylvania where he is licensed to practice law. (*Id.* ¶¶ 5-6.) Organic America, The Homestead Greenhouse Leasing Company, LLC, and NDF Enterprises have principal places of business located in Redford, Michigan. (*Id.* ¶¶ 7, 14-15.) Organic America Supply, Organic America Farms, LLC, Hydroponics House, Organic America Holdings, LLC, and Organic America Wholesale, LLC have principal places of business located in Royal Oak, Michigan. (*Id.* ¶¶ 8-12.) Organic America of Fort Myers, LLC and D&G Green Enterprises, LLC have their principal place of business in Florida. (*Id.* ¶¶ 13, 16.) Mad Hatter Nutrients and Soils and Homestead Hydro have their principal place of business located in Colorado. (*Id.* ¶¶ 17-18.) Organic America Farms of Amherst is a limited liability company with its principal place of business located in Amherst, Massachusetts. (*Id.* ¶ 19.)

Plaintiff brings fifteen counts against Defendants: (1) fraud; (2) violation of § 10b of the 1934 Act; (3) R.I.C.O. - 18 U.S.C. § 1962; (4) breach of fiduciary duty by individual defendants; (5) violation of N.J.S.A. 14a:12-7; (6) violation of uniform fraudulent transfer act; (7) negligent misrepresentation; (8) breach of contract; (9) conversion; (10) unjust enrichment; (11) misappropriation; (12) contract rescission; (13) intentional interference with contractual relationship; (14) intentional interference with prospective economic advantage; and (15) demand for an equitable accounting. (Compl. 12-28.)

On July 2, 2015, the Court granted Plaintiff's motion for default, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, against Defaulting Defendants. (ECF No. 11.) In response, Defaulting Defendants filed a motion to vacate the entry of default on August 13, 2015. (ECF No. 17.) On the same date, Defendants collectively filed a motion to dismiss Plaintiff's Complaint. (ECF No. 16.)

## II. Motion To Vacate Default

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs both motions to enter default judgment, as well as, motions to vacate an entry of default. *See* Fed. R. Civ. P. 55(a), (c). Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The decision to vacate an entry of default is left to the sound discretion of the district court. When evaluating motions to vacate default, the court should weigh three factors: (1) "[w]hether the plaintiff will be prejudiced" if the default is lifted; (2) "[w]hether the defendant has a meritorious defense"; and (3) "[w]hether culpable conduct of the defendant led to the default." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *see United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984). "There is a distinction between a default

standing alone and a default judgment. . . . Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." *Feliciano*, 691 F.2d at 656. The Third Circuit has further established that when there is a close call, the motion "should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983) (*citing Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)); *see also Livingston Powdered Metal, Inc. v. N.L.R.B.*, 669 F.2d 133, 136-37 (3d Cir. 1982) ("matters involving large sums should not be determined by default judgment if it can reasonably be avoided, since the interests of justice are best served by a trial on the merits").

**B.    Analysis**

The Court finds that Defaulting Defendants have made a sufficient showing to vacate default. Defaulting Defendants argue that default should be lifted because: (1) Plaintiff will not be prejudiced because Defaulting Defendants' delay in filing a responsive pleading was minimal and there is a minimal risk of losing evidence as this matter is still in its early stages; (2) Defaulting Defendants have meritorious defenses, such as a lack of personal jurisdiction, improperly plead claims, and improper venue; and (3) there was no culpable conduct on the part of Defaulting Defendants because they were actively engaged in settlement negotiations, even after the Complaint was filed, and then actively seeking new counsel to represent them in this matter. (Defs.' Moving Default Br. 10-11, 24-26, ECF No. 17-1.)

Plaintiff argues that if Defaulting Defendants' motion is granted, he will suffer prejudice because he has already spent a large "amount of time and money chasing these Defendants" and he will be unable to "quantify the amount of relevant evidence that has been lost" the longer this action persists. (Pl.'s Opp'n Default Br. 8, ECF No. 21.) Determining whether a plaintiff will be prejudiced by lifting a default, according to the Third Circuit, requires a showing of such things as

"loss of available evidence," "increased potential for fraud or collusion," or substantial reliance on the default. *Feliciano*, 691 F.2d at 657. Further, the Court in *Feliciano* explained that "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early state of the proceeding." *Id.* at 656-57. Here, Plaintiff has not suggested that the lifting of default will hinder his ability to pursue any claim against Defaulting Defendants. Additionally, given Defendants' retention of new counsel just two days prior to the entry of default, as well as, Defendants' subsequent motion to dismiss filed in response to Plaintiff's Complaint, there is little to support a claim of prejudice justifying denial of Defaulting Defendants' motion pursuant to Rule 55(c). This factor weighs in favor of Defaulting Defendants.

As to Defaulting Defendants' asserted meritorious defenses, Plaintiff contends that "Defendants failed to raise any meritorious defenses to Counts IV, VII, X, XI, XII and XV" (Pl.'s Opp'n Default Br. 6); however, Defaulting Defendants have asserted defenses to the remaining claims through their motion to dismiss (Defs.' Moving Dismissal Br. 4-17, ECF No. 16-1). Further, Defaulting Defendants, in their motion to dismiss, argue that the Court lacks personal jurisdiction and that venue is improper. (*Id.* at 18-26.) Assertion "of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (internal quotation marks omitted).

Here, the Court is satisfied that Defaulting Defendants have made a sufficient showing of a meritorious defense to Plaintiff's claims through their motion to dismiss. First, Defendants' motion to dismiss asserts a lack of personal jurisdiction as grounds for dismissal arguing that jurisdiction is improper with regards to all defendants, including Defaulting Defendants. (Defs.'

6

Moving Dismissal Br. 18-25.) Additionally, Defaulting Defendants assert that a number of Plaintiff's claims should be dismissed, pursuant to Rule 12(b)(6) and 9(b), for failing to sufficiently plead the necessary factual assertions to substantiate the various elements of the asserted claims. (*Id.* 4-17.) At this stage, the Court is by no means finding that Defaulting Defendants will prevail on these defenses, however, as discussed below, the Court's decision to grant Defendants' motion to transfer is predicated on the Court's lack of personal jurisdiction over most, if not all, of the Defendants. The Court finds that Defaulting Defendants have made a sufficient showing that this factor weighs in favor of them and further justifies vacating the entry of default.

Finally, Plaintiff contends that Defendants' "actions to date are not those of 'excusable neglect,' but rather a calculated pattern of delay and obfuscation." (Pl.'s Opp'n Default Br. 7.) Plaintiff argues that the record is evidence of Defaulting Defendants' "attempt to avoid service and delay the start of these proceedings." (*Id.*) However, despite Defaulting Defendants' failure to file a timely pleading in response to Plaintiff's Complaint, which ultimately led to the entry of default, Defaulting Defendants' subsequent communications with the Court, through their new counsel, have been timely. "In this context culpable conduct means actions taken willfully or in bad faith." *Gross*, 700 F.2d at 123-24 (citing *Feliciano*, 691 F.2d at 657). Further, courts have determined that a defendant's willingness to engage in settlement discussions, as Defaulting Defendants have asserted here, does not support a finding of bad faith or disregard for one's responsibilities so as to assign culpability. (Defs.' Moving Default Br. 10-11); *see Century 21 Real Estate LLC v. Kenneth M. Yanni, Inc.*, No. 07-6078, 2009 WL 904122, at *3 (D.N.J. Mar. 31, 2009); *see also Replication Med., Inc. v. Aureus Med. GMBH*, No. 15-1685, 2015 WL 4111650, at *5 (D.N.J. July 8, 2015). Although the Court does not find Defaulting Defendants' failure to file a responsive pleading within the twenty-one day period to constitute willful conduct, the Court

cautions Defaulting Defendants that in the future they should take reasonable steps to secure an extension either through consent from their adversary or the Court. Therefore, because Defaulting Defendants' conduct was not culpable, the third factor weighs in favor of vacating the entry of default.

Accordingly, the Court will grant Defaulting Defendants' motions to vacate the entry of default.[1]

### III. <u>Motion to Transfer Venue</u>[2]

#### A. **Legal Standard**

A federal district court may transfer a civil action to a different venue under 28 U.S.C. §§ 1404(a) or 1406(a).[3] Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1406(a) provides "[t]he district court of a district in which is filed a

---

[1] Although Defaulting Defendants have failed to supply the Court with a brief in support of their motion to vacate the entry of default in compliance with Local Civil Rule 7.2, the Court will excuse Defaulting Defendants' failure to comply. However, the Court cautions Defaulting Defendants to abide by all Local Rules in the future.

[2] Whether the Court may assert personal jurisdiction over Nicholas and Karo is very fact determinative and may warrant a factual hearing, however, Plaintiff has failed to provide the Court with sufficient support for asserting personal jurisdiction as to the remaining Defendants. Therefore, instead of conducting a personal jurisdiction analysis and possible evidentiary hearing to handle the factual disputes, the Court will address Defendants' alternate request to transfer this action to Michigan where all of the Defendants have consented to both jurisdiction and venue. (Def.'s Moving Dismissal Br. 26.) *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962); *see also United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964) (explaining that § 1404(a) is broad enough to allow for transfers even in the absence of personal jurisdiction).

[3] "Because of the similarity between 1404(a) and 1406(a), courts have often treated the sections the same, or have transferred pursuant to both sections." *McTyre v. Broward Gen. Med. Ctr.*, 749 F. Supp. 102, 105 n.2 (D.N.J. 1990) (citing *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967)).

8

case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Third Circuit has explained that "Section 1404(a) provides for the transfer of a case where both the original and requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Further, the Third Circuit has determined that, even in the absence of personal jurisdiction over a defendant, a court may transfer a case pursuant to § 1404(a). *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) (citing *Goldlawr, Inc.*, 369 U.S. at 466-67).

When deciding a motion to transfer venue under § 1404(a), a district court should remember that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 878-79. In conducting its evaluation, the Court must balance various private and public interests related to the transfer. *Id.* The private interest factors include:

> (1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) . . . .

*Id.* (internal citations omitted). The public interest factors include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted). "[T]he burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993).

**B.     Analysis**

The Court finds that Defendants have made a sufficient showing to warrant transferring this action pursuant to § 1404(a).[4] Defendants argue that this action should be transferred to Michigan,[5] because: (1) this Court lacks personal jurisdiction over each of the Defendants; and (2) Defendants consent to both jurisdiction and venue in Michigan. (Def.'s Moving Dismissal Br. 18-26.) Defendants' arguments regarding personal jurisdiction raise serious concerns about this Court's ability to assert jurisdiction over all of the Defendants in this case. While the Court recognizes that it may potentially have personal jurisdiction with respect to Nicholas and Karo, the Court appears to lack personal jurisdiction as to a majority of the Defendants.[6]

Plaintiff has made no argument with regard to Defendants' contention that venue is improper or as to Defendants' alternative request to transfer this case to Michigan. Instead,

---

[4] Although Defendants have moved to transfer venue pursuant to § 1406(a), the Court is inclined to transfer this case pursuant to § 1404(a) because venue may in fact be proper and the Court may have personal jurisdiction as to Nicholas and Karo, making § 1406(a) inapplicable. In any case, in the event that the Court does not have personal jurisdiction or proper venue as to Nicholas and Karo, the Court would nonetheless transfer this matter pursuant to § 1406(a).

[5] Defendants do not state a specific district in Michigan, however, the Eastern District of Michigan is the proper transferee district because Nicholas resides within that district and the Corporate Defendants located in Michigan have their principal places of business there.

[6] The Court appears to lack personal jurisdiction over most, if not all, of the Defendants because none of the Defendants are New Jersey citizens, Defendants do not have the requisite minimum contacts with New Jersey, such as conducting business herein, and Defendants have not "purposefully avail[ed] [themselves] of the privilege of conducting activities within [New Jersey], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Furthermore, Plaintiff has failed to supply sufficient facts from which the Court could make its jurisdictional determination as to most of the Defendants.

Plaintiff merely argues that this Court has personal jurisdiction over all Defendants. (Pl.'s Opp'n Dismissal Br. 11-18.)

Here, the Court finds that the factors the Third Circuit established in *Jumara* weigh in favor of transferring this matter to Michigan. Although Plaintiff selected the District of New Jersey as his choice of venue, the remaining factors outweigh this consideration. Defendants have consented to both jurisdiction and venue in Michigan, the claims arose out of a contract dispute stemming from contracts that were negotiated, formed, signed and executed in Massachusetts, and a majority of the Corporate Defendants have their principal places of business in Michigan, where their books and records would likely be located. (Def.'s Moving Dismissal Br. 17-26.) Also, Defendants' witnesses are located in Michigan and Massechusetts. (N. Del Franco Cert. ¶ 22.) Therefore, the Court finds that the private interest factors established in *Jumara* weigh in favor of Defendants.

The public interest factors set forth in *Jumara* also weigh in favor of transferring this matter to Michigan. Plaintiff has not contested any of Defendants' arguments regarding the propriety of a venue transfer to Michigan. In addition, Defendants have stated that "Michigan . . . is the district where [this matter] should have been brought." (Pl.'s Opp'n Dismissal Br. 11-18; Def.'s Moving Dismissal Br. 26.) Also, keeping this matter in the District of New Jersey could make trial more difficult and costly because Defendants' witnesses are out-of-state residents. (N. Del Franco Cert. ¶ 22.) Further, due to the Court's likely lack of personal jurisdiction as to most Defendants and in the interest of justice and practicality, the Court finds good cause to transfer this matter to Michigan where Plaintiff's claims can be considered on the merits. Thus, *Jumara*'s public interest factors also weigh in favor of Defendants' Motion to Transfer.

Although Plaintiff's choice of forum is afforded deference when addressing a motion to transfer venue under § 1404(a), this Court finds no reason for this action to continue in the District

11

of New Jersey because Defendants have consented to both jurisdiction and venue in Michigan and the public and private interest factors established in *Jumara* outweigh Plaintiff's choice of forum and weigh in favor of transferring this matter.

Accordingly, the Court will grant Defendants' motion to transfer venue and transfer this matter to the District Court for the Eastern District of Michigan.

### IV. Conclusion

For the reasons set forth above, Defaulting Defendants' motion to vacate the entry of default is granted and Defendants' alternative motion to transfer is granted. An order consistent with this Memorandum Opinion will be entered.

 s/ Michael A. Shipp  
**MICHAEL A. SHIPP**  
**UNITED STATES DISTRICT JUDGE**

**Dated:** March 31, 2016